The Honorable Mike Hathorn State Representative P.O. Box 1406 Huntsville, AR 72740-1406
Dear Representative Hathorn:
I am writing in response to your request for my opinion regarding several questions relating to the ½-cent sales tax that funds the Property Tax Relief Trust Fund. You report the following:
 Specifically, my concern is that the interest derived from this ½ cent sales tax be prorated to the taxing entities along with the principle [sic] amount that is raised by the tax. Currently the interest generated by this tax is deposited to the state's general revenues.
 In local government the governing principle when dividing revenues is "interest follows principle [sic]." I believe this principle should apply to the interest generated by this particular sales tax. In fact legislation has been filed. I refer to SB 721 by Senator Paul Miller. [1]
Reflecting this concern, you have posed the following questions:
 1. What, in your opinion, was the original intent of the proposal that became Amendment 79 and subsequent legislation regarding the use of the ½ cent sales tax and these interest dollars?
 2. Can the redirection of these interest dollars be effectuated by simple legislation or would a constitutional amendment be required?
RESPONSE
With respect to your first question, Amendment 79, which provides, interalia, for a $300 annual homestead credit, never addresses a tax intended to reimburse counties for their revenue loss as a result of the credit, much less the permissible distribution of interest earned on that tax. The tax referenced in your question is imposed by statute. Under the current statutory law, such interest is pledged to the state's General Improvement Fund and hence may not be distributed to the counties. With respect to your second question, I believe the General Assembly may by legislation dispose of this interest income in whatever manner it deems appropriate.
Question 1: What, in your opinion, was the original intent of theproposal that became Amendment 79 and subsequent legislation regarding theuse of the ½ cent sales tax and these interest dollars?
Section 3 of Amendment 79 to the Arkansas Constitution provides for an annual state credit in the amount of $300 against ad valorem property tax on a homestead.[2] Section 26-26-1118 of the Code acknowledges this credit and provides that "[t]he county and taxing units within the county shall be entitled to reimbursement of the reduction in accordance with §26-26-310." Subsections 26-52-302(c) and 26-53-107(c) of the Code impose sales and use taxes of 0.5 %, to be located in the Property Tax Relief Trust Fund pursuant to A.C.A. § 19-5-1103 for the purpose of reimbursing counties for the property tax revenues lost as a result of the homestead exemption. Section 26-26-310 sets forth the procedures for making distributions from the Fund to the counties.
Amendment 79 at no point provides for levying any taxes to reimburse counties for revenues lost as a result of the homestead exemption. I consequently cannot render any opinion regarding the people's intention regarding the disposition of interest income earned on such taxes. With regard to subsequent legislation, I will note that the legislature would indeed have intended interest to follow principal if it had established the Property Tax Relief Trust Fund as an actual "trust fund," since A.C.A. § 19-4-503(e) expressly provides that interest on a trust fund must be credited to the fund. However, despite its name, the Property Tax Relief Trust Fund is not a trust fund. Rather, as acknowledged in A.C.A. §§ 19-5-1103 and 19-5-1110, the Fund is a "special revenue fund" held in the state treasury, dedicated to the particular purpose of proportionately reimbursing counties for their homestead-exemption revenue loss. The Fund is not administered by a trustee, as would be required to qualify it as a true "trust."[3] Instead A.C.A. § 26-26-310(a)(2)(B) simply provides that "the Chief Fiscal Officer of the State shall determine the balance in the Property Tax Relief Trust Fund and certify it to the Treasurer of State, who shall make distributions from the fund to each county treasurer in accordance with the county's proportionate share of the total statewide property tax reduction for that calendar year resulting from the provisions of § 26-26-1118."
No codified statute expressly addresses the distribution of interest income generated by the Fund. However, Act 1691 of 2001 (not codified), denominated the General Improvement Distribution Act of 2001, generally provides that interest income earned on state treasury fund balances will be distributed to the state's General Improvement Fund. See Miles v.Gordon, 234 Ark. 525, 529, 353 S.W.2d 157 (1962) ("[T]he Legislature is not prohibited by our Constitution from separating the interest from the principal and pledging it. . . ."). Accordingly, under current law, the interest at issue in your request may not be distributed along with principal to the counties.
By its terms, Act 1691 will remain in effect until July 1, 2003. Senate Bill 709, which was introduced in the 84th General Assembly to renew this interest distribution scheme, died in committee, as did Senate Bill 721, which proposed to amend A.C.A. § 26-26-310 to specify that sales and use tax revenues returned to a county collector would include the county's proportionate share of interest earned on tax revenues. It is unclear what action, if any, the legislature will take on this issue if it convenes in special session.
Question 2: Can the redirection of these interest dollars be effectuatedby simple legislation or would a constitutional amendment be required?
As stated in Miles, 234 Ark. at 529, the legislature is empowered to dispose in any manner it chooses of non-trust fund interest income. The court justified this holding as follows:
 We are . . . of the opinion that the Legislature is not prohibited by our Constitution from separating the interest from the principal and pledging it, as in Act 65. For that matter, taxes and interest are not the same. Taxes are enforced contributions exacted pursuant to statutory authority, while interest is the price paid by a borrower for the use of what he borrows, generally a percentage on the principal amount. We hold that interest, when separated from the principal by legislative enactment, is not "taxes", as the term is ordinarily used. . . .
Id. (Emphasis added.) Implicit in this pronouncement are two propositions: (1) in the absence of legislation directing otherwise, interest will indeed follow principal; and (2) no legal barrier would preclude the legislature from declaring that interest will follow principal, although doing so would appear to be unnecessary unless existing legislation directed otherwise.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] This proposed legislation died in committee during the recent legislative session.
[2] For a discussion of the precise scope of this credit, see Ark. Op. Att'y Gen. No. 2001-213.
[3] As the court noted in Halliburton Co. v. E.H. Owen,28 Ark. App. 314, 773 S.W.2d 453 (1989):
 A trust is a fiduciary relationship in which one person is the holder of the title to property subject to an equitable obligation to keep or use the property for the benefit of another. The settlor (trustor) of a trust is the person who intentionally causes the trust to come into existence. The trustee is the person who holds title for the benefit of another. G.T. Bogert, Trusts, 1 (1987).